IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 07-0410

════════════

 

Employees Retirement System of
Texas, Petitioner,

 

v.

 

Xavier Duenez
and Irene Duenez, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from
the

Court of Appeals for the
Thirteenth District of Texas

════════════════════════════════════════════════════

 

 

            Justice Hecht, dissenting.

 

 

            Strange
as it may seem, a state agency has sued itself to have its own jurisdiction
declared exclusive, then moved to dismiss its action for want of jurisdiction,
and now complains that the trial court denied its motion. To be clear: the
agency does not contend that it should have won a declaratory judgment; it
contends that its motion to dismiss its own action should have been
granted. One may ask: why doesn’t the agency simply take a nonsuit?
If the agency is trying to obtain judicial approval of its claim of exclusive
jurisdiction, the plan has backfired: the court of appeals held against the
agency.1 But a party’s dispute with itself is nonjusticiable.

 

There is much argument with citation
of many cases to establish the long-recognized general principle that no person
may sue himself. Properly understood the general principle is sound, for courts
only adjudicate justiciable controversies. They do
not engage in the academic pastime of rendering judgments in favor of persons
against themselves.2

 

The court of appeals should have
dismissed this interlocutory appeal.3

            The
Court’s opinion does not clearly set out the peculiar posture of this case,
which is so unusual that it must be carefully understood. The Employees
Retirement System of Texas (ERS), a state agency,4
provided health and accident benefits to Xavier Duenez,
a state employee,5 under a plan administered by Blue Cross
and Blue Shield of Texas (BCBST). The plan paid for health care for Duenez’s daughter Ashley, who along with her parents and siblings
was injured in a car accident with a drunk driver. The driver had purchased
beer at a convenience store just before the accident, and Duenez
and his wife Irene sued the store owner under the Texas Dram Shop Act.6
The Duenezes obtained a substantial judgment, and
BCBST requested a partial assignment to protect ERS’s
right of subrogation. When the Duenezes refused,
BCBST sued them as well as ERS, alleging that ERS was “a person whose joinder as a party to this litigation is needed for just
adjudication.” BCBST requested the following relief: “[a] declaration of the
respective rights and other legal relations of ERS, BCBST as ERS’ administering
firm and manager, Xavier Duenez, Irene Duenez, and Ashley Duenez”; “[a]
declaration that ERS/BCBST is entitled to have [the Duenezes]
execute and deliver to ERS/BCBST . . . an appropriate partial
assignment”; attorney fees; and costs. ERS answered with a general denial,
characterizing itself as “Defendant ERS”.

            The
case languished for several years while the Dram Shop case was on appeal, until
the Duenezes settled their claims for their injuries
and Ashley’s for $35 million.7 The Duenezes then filed a pleading entitled “cross claim and
third party action”, “seeking a judicial declaration that [the Duenezes] owe no subrogation to Blue Cross/Blue Shield”, or
alternatively, “that any subrogation to which Plaintiff is entitled to [is]
subject to the common fund doctrine”. The pleading did not
mention ERS. ERS filed an amended answer to BCBST’s
petition and “motion to dismiss for lack of jurisdiction”, asserting that its
sovereign immunity from suit had not been waived, that by statute it had
exclusive jurisdiction to determine its right to subrogation,8
and that administrative remedies had not been exhausted. ERS sought relief only
against BCBST — that the court “dismiss the Plaintiff’s Petition” and “that
Plaintiff take nothing”. ERS did not mention the Duenezes’
cross-claim.

            The
Duenezes amended their cross-claim to seek the
identical relief against ERS as well as BCBST, and to request abatement of any
administrative proceedings before ERS, pending conclusion of the lawsuit. ERS
responded to this pleading only by reasserting its claim to exclusive
jurisdiction, not by moving to dismiss the Duenezes’
cross-claim. BCBST amended its petition to request declarations:

 

•           “that ERS has exclusive jurisdiction . . . to
determine whether the group health care coverages and
benefits provided by ERS . . . with administrative support from Blue
Cross are or are not subject to . . . any . . . legal or
equitable doctrine”;

 

•           “that the statutory remedies provided to Xavier Duenez with respect to ERS’ decisions regarding subrogation
for benefits paid to Xavier Duenez are exclusive”;

 

•           “that ERS/Blue Cross is entitled to recover its full
subrogation interest from Defendants”; and

 

•           “of the respective rights and other legal relations of
ERS, Blue Cross as ERS’ administering firm, Xavier Duenez,
Irene Duenez, and Ashley Duenez”.

 

BCBST added a request for “[m]onetary judgment in favor of ERS/Blue Cross for the full
amount of the ERS subrogation interest”. The amount of that interest, as
asserted in letters from ERS to the Duenezes’ counsel,
was $295,105.57.9

            At
the hearing on ERS’s motion to dismiss, the trial
court was puzzled why BCBST would sue yet assert that the only remedy was
administrative. The court asked BCBST’s counsel: “If
you thought you had administrative relief, why did you file a case in District
Court?” Though counsel’s answer was not entirely clear, he said this:

 

When we found out about [the
judgment in the Dram Shop case], we thought, what is the best way to preserve
whatever right we have, whatever subrogation right we have. They [i.e.,
the Duenezes] had already indicated to the ERS that
they didn’t think ERS had jurisdiction over anything, and it became clear to us
that we were not going to be able to get their attention proceeding through
administrative proceedings only. Therefore, we decided the way to preserve
whatever subrogation interest there is — they say there really isn’t one, we
say there’s a dollar-for-dollar one — the best way to preserve that is to file
a lawsuit. . . . Now, ERS did not join in that lawsuit, we, Blue
Cross, as the administering firm, filed what we, as Blue Cross, thought would
be the best thing to do at the time. Now, for the record today, we are on board
with ERS in terms of the ERS exclusive authority . . . .

 

The trial court denied ERS’s motion to dismiss and ordered that administrative
proceedings be abated.

            The
court of appeals recognized that BCBST and ERS have identical interests in this
case:

 

Although ERS is named as a
defendant by BCBS’s live petition, ERS is a defendant
in name only. ERS is not adverse to BCBS’s claims. In
fact, BCBS’s claims have been pled for the express
benefit of ERS . . . . Not only are the
parties not adverse to each other, they also have an ongoing agency
relationship controlled by statute. . . .

 

BCBS brings its lawsuit in its
capacity “as ERS’s administrating firm” — as an agent
for ERS. In addition, ERS maintains on appeal that BCBS has no right or interest
in the settlement proceeds, a contention that BCBS has not contested.
. . . Based on its pleadings, it is unclear why BCBS named ERS as a
defendant.

 

ERS moved to dismiss this
lawsuit. The trial court denied its request. In this appeal, ERS argues that it
has exclusive jurisdiction over subrogation disputes, including the subrogation
claim filed by BCBS on its behalf. BCBS has not filed an appellate brief with
this Court. It is worth noting, however, that BCBS’s
live petition requests from the district court, in the alternative to a money
judgment, “[a] declaration that ERS has primary jurisdiction and authority”
over the parties’ subrogation dispute. It therefore appears that the interests
of BCBS and ERS are fully aligned in this litigation, even though BCBS has
named ERS as a defendant.10

 

The court of appeals nevertheless
proceeded to tackle the issue of ERS’s statutory
authority because ERS and the Duenezes disagree. But
ERS never moved to dismiss the Duenezes’ cross-claim.
ERS’s motion to dismiss was expressly directed at BCBST’s suit. The Duenezes
certainly have no standing to support the trial court’s jurisdiction over BCBST’s suit. Were BCBST’s suit
dismissed, the Duenezes claim would be unaffected
unless they were somehow in privity with BCBST, and
they are not. To be sure, the Duenezes are interested
in the extent of ERS’s authority to decide
subrogation issues, but they are no more interested in a dispute between BCBST
and ERS than an amicus curiae would be. Indeed, it
would be to the Duenezes’ benefit if BCBST’s suit were dismissed — including its claim against
the Duenezes for $295,105.57, attorney fees, and
costs.

            ERS’s interlocutory appeal from the trial court’s order
denying its motion to dismiss BCBST’s suit raised no justiciable issue. We should grant ERS’s
petition for review, vacate the court of appeals’ judgment, and dismiss the
appeal.11 Because the
Court does not do so, I respectfully dissent.

 

__________________________

Nathan L. Hecht

Justice

 

Opinion delivered: July 3, 2009






















[1] 221
S.W.3d 809 (Tex. App.–Corpus Christi-Edinburg 2007).





[2] United States v.
Interstate Commerce Comm’n, 337 U.S. 426, 430
(1949) (quoted in United States Fid. & Guar. Co. v. Goudeau,
272 S.W.3d 603, 612 (Tex. 2008) (Green, J., joined by Jefferson, C.J., and
Johnson, J., dissenting)).





[3] See
Texas Ass’n of Bus. v. Texas
Air Control Bd., 852 S.W.2d 440, 445-446 (Tex. 1993) (standing, as a matter
of subject matter jurisdiction, may be raised for the first time on appeal).





[4] Article
XVI, § 67(b)(2) of the Texas Constitution
requires the Legislature to “establish by law an Employees Retirement System of
Texas to provide benefits for officers and employees of the state”. The
Legislature has done so in chapters 811-815 of the Texas Government Code.
Section 811.003 provides that “[t]he retirement system
is a public entity.”





[5] Benefits
were provided under the Texas Employees Uniform Group Insurance Benefits Act,
Act of April 21, 1975, 64th Leg., R.S., ch. 79, 1975
Tex. Gen. Laws 208, as amended, formerly Tex.
Ins. Code art.
3.50-2, recodified as the Texas Employees Group
Benefits Act, now Tex. Ins. Code §§ 1551.001-.407.





[6] Tex. Alco. Bev. Code § 2.02.





[7] According
to the Duenezes, settlement funds were allocated
$12,644,000 to Ashley, $6,104,000 to Irene, $3,052,000 to Xavier, and
$13,200,000 to attorney fees and expenses. The judgment for the claims of two
other Duenez family members injured in the accident
was reversed and remanded by this Court in F.F.P. Operating Partners, L.P.
v. Duenez, 237 S.W.3d 680 (Tex. 2007).





[8] ERS
cited Tex. Ins. Code § 1551.352.





[9] ERS also
asserted that it overpaid $113,174.76 in benefits that Duenez
improperly claimed.





[10] 221 S.W.3d 809, 812 (Tex. App.–Corpus Christi-Edinburg 2007) (citations and footnote omitted).





[11] See
New York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 679 (Tex.
1990) (per curiam) (reversing the court of appeals’
judgment and rendering judgment dismissing the appeal for lack of jurisdiction because
the trial court had not rendered a final judgment) (citing Long v. Humble
Oil & Refining Co., 380 S.W.2d 554, 555 (Tex. 1964) (per curiam)); see also Brooks v. Northglen
Ass’n, 141 S.W.3d 158, 164 (Tex. 2004); Brown
v. Todd, 53 S.W.3d 297, 306 (Tex. 2001).